Clark, J.
Appeal from a judgment of the Supreme Court (Devine, J.), entered November 14, 2013 in Albany County, which dismissed petitioner’s application, in a proceeding pursuant to CPLR article 78, to review a determination of the Board of Parole denying petitioner’s request for parole release.
Petitioner has served approximately 30 years on an aggregate sentence of 18 years to life in prison for his conviction of murder in the second degree and robbery in the first degree. The convictions stemmed from a February 1982 incident in which an off duty police officer was killed by petitioner’s accomplice during an attempted robbery. Petitioner made his latest of numerous appearances before the Board of Parole in August 2012, and his request for release was denied. He was ordered to be held an additional 24 months. After the Division of Parole failed to timely respond to his administrative appeal, petitioner commenced this CPLR article 78 proceeding. Supreme Court dismissed the petition, and petitioner now appeals.
We affirm. The procedures governing parole are set forth in Executive Law article 12-B. Executive Law § 259-i (5) dictates the scope of our review, providing that “[a]ny action by the [Bjoard or by a hearing officer pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law.” The Court of Appeals has long interpreted that language — in both current and prior statutes — to mean that “so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts” (Matter of Hines v State Bd. of Parole, 293 NY 254, 257 [1944]; see Matter of Silmon v Travis, 95 NY2d 470, 476-478 [2000]). In New York, it is “the . . . Board [that] holds the power to decide whether to release a sentenced prisoner on parole” (Matter of Silmon v Travis, 95 NY2d at 476). As the Court of Appeals has explained, “[t]o require the [Board] to act in accordance with judicial expectations . . . would substantially undermine the [legislative] decision to entrust release determinations to the [Board] and not the courts” (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 76-77 [1980] [internal quotation marks omitted]). Absent failure by the Board to comply with the mandates of Executive Law article 12-B, “judicial intervention is warranted only when there is a ‘showing of irrationality bordering on impropriety’ ” (Matter of Silmon v Travis, 95 NY2d at 476, quoting Matter of Russo v New York State Bd. of Parole, 50 NY2d at 77; see Matter of Valderrama v Travis, 19 AD3d 904, 905 [2005]). Thus, as the Court of Appeals further stated in Silmon, “we review whether the Board’s decision to *1270 deny parole was arbitrary or capricious” (Matter of Silmon v Travis, 95 NY2d at 476).[1]
Executive Law article 12-B mandates that “[discretionary release on parole shall not be granted merely as a reward for good conduct” (Executive Law § 259-i [2] [c] [A]). Rather, the Board must consider whether “there is a reasonable probability that, if such inmate is released, he [or she] will live and remain at liberty without violating the law, and that his [or her] release is not incompatible with the welfare of society and will not so deprecate the seriousness of his [or her] crime as to undermine respect for law” (Executive Law § 259-i [2] [c] [A]). The decision to grant parole release is discretionary, but the Board is required to consider certain guidelines in making its determination (see Matter of Silmon v Travis, 95 NY2d at 477). Those guidelines include the inmate’s institutional record (goals and accomplishments, academic achievement, vocational education, training and work assignments, therapy and interaction with staff), release plans, statements by the crime victim, the seriousness of the offense considering type and length of sentence, recommendations of the sentencing court and district attorney, the presentence probation report, mitigating or aggravating factors to the crime, activities following arrest prior to confinement, and prior criminal record (Executive Law § 259-i [2] [c] [A] [i], [iii], [v], [vii], [viii]).
While the Board is required to detail the reasons for a denial of discretionary release (see Executive Law § 259-i [2] [a] [i]), the Court of Appeals has ruled that the “Board need not expressly discuss each of these guidelines in its determination” *1271 (Matter of King v New York State Div. of Parole, 83 NY2d 788, 791 [1994]), and we are bound by that ruling. The Court of Appeals has also explained that “the statutory scheme is such that no judicial review of the merits in any case is possible” (Matter of Hines v State Bd. of Parole, 293 NY at 257 [emphasis added]).[2] These principles, which are derived from the statute itself, underlie our limited and deferential review of the Board’s decisions. Consistent with them, we have ruled that “our role is not to assess whether the Board gave the proper weight to the relevant factors” in reviewing the Board’s determination that the violent nature of the crimes for which petitioner was convicted outweighed his exemplary institutional behavior and extensive evidence of rehabilitation (Matter of Comfort v New York State Div. of Parole, 68 AD3d 1295, 1296 [2009]). In that case, we explained that, although we review the Board’s ultimate determination on a standard of “irrationality bordering on impropriety” (Matter of Comfort v New York State Div. of Parole, 68 AD 3d at 1297 [internal quotation marks and citations omitted]), we cannot “effectively review the Board’s weighing process, given that it is not required to state each factor that it considers, weigh each factor equally or grant parole as a reward for exemplary institutional behavior” (id. at 1296 [emphasis added]).
In that regard, the Court of Appeals has held that the Board rationally denied parole release to a petitioner — who “was a productive citizen and model prisoner [and] who enthusiastically engaged in educational and vocational programs, taught other prisoners and wrote about prison life” — based upon the brutality of his crime and his continuing to maintain his innocence of that crime (Matter of Silmon v Travis, 95 NY2d at 477). Similarly, this Court has repeatedly held — both recently and historically — that, so long as the Board considers the factors enumerated in the statute, it is “entitled ... to place a greater emphasis on the gravity of [the] crime” (Matter of Montane v Evans, 116 AD3d 197, 203 [2014], lv granted 23 NY3d 903 [2014] [internal quotation marks and citation omitted]; see Matter of Williams v New York State Div. of Parole, 114 AD3d 992, 992-993 [2014]; Matter of Lashway v Evans, 110 AD3d 1417, 1418 [2013]; Matter of McCaskell v Evans, 108 AD3d 926, *1272 927 [2013]; Matter of Vigliotti v State of N.Y. Exec. Div. of Parole, 98 AD3d 789, 790 [2012], lv dismissed 20 NY3d 1034 [2013]; Matter of Gonzalez v Chair, N.Y. State Bd. of Parole, 72 AD3d 1368, 1369 [2010]; Matter of Lue-Shing v Pataki, 301 AD2d 827, 828 [2003], lv denied 99 NY2d 511 [2003]; People ex rel. McCormack v New York State Bd. of Parole, 244 AD2d 673, 673 [1997]; Matter of Walker v New York State Div. of Parole, 203 AD2d 757, 758-759 [1994]; Matter of Ittig v New York State Bd. of Parole, 59 AD2d 972 [1977], lv denied 43 NY2d 648 [1978]; but see Matter of King v New York State Div. of Parole, 190 AD2d 423, 434 [1993], affd on other grounds 83 NY2d 788 [1994] [a First Department case holding, in conflict with our precedent, that the Board may not deny discretionary release based solely on the nature of the crime when the remaining statutory factors are considered only to be dismissed as not outweighing the seriousness of the crime]).
Particularly relevant here, we have held that, even when a petitioner’s institutional behavior and accomplishments are “exemplary,” the Board may place “particular emphasis” on the violent nature or gravity of the crime in denying parole, as long as the relevant statutory factors are considered (Matter of Valderrama v Travis, 19 AD3d at 905). In so holding, we explained that, despite petitioner’s admirable educational and vocational accomplishments and positive prison disciplinary history, “[o]ur settled jurisprudence is that a parole determination made in accordance with the requirements of the statutory guidelines is not subject to further judicial review unless it is affected by irrationality bordering on impropriety” (id. [internal quotation marks and citations omitted]). We emphasize that this Court has repeatedly reached the same result, on the same basis, when reviewing denials of parole to petitioners whom we recognized as having exemplary records and as being compelling candidates for release (see Matter of Comfort v New York State Div. of Parole, 68 AD3d at 1296-1297; Matter of Cruz v New York State Div. of Parole, 39 AD3d 1060, 1061-1062 [2007]; Matter of Guerin v New York State Div. of Parole, 276 AD2d 899, 900 [2000]; see also Matter of Garofolo v Dennison, 53 AD3d 734, 734-735 [2008]; Matter of Montalvo v New York State Bd. of Parole, 50 AD3d 1438, 1438-1439 [2008]; Matter of Sanchez v Dennison, 21 AD3d 1249, 1249-1250 [2005]; Matter of Mandala v Dennison, 20 AD3d 757, 757-758 [2005], lv denied 5 NY3d 714 [2005]; Matter of Rivera v Travis, 289 AD2d 829, 830 [2001]).
Evaluating the Board’s written determination here in the context of the parole hearing transcript (see Matter of Siao-Pao v Dennison, 11 NY3d 777, 778 [2008]; Matter of Montane v Ev *1273 ans, 116 AD3d at 203 n 2), we conclude that the Board properly considered the necessary factors in denying petitioner’s request for parole release and founded its determination upon the facts of this particular case. Indeed, the record is replete with evidence that the Board reviewed, considered and discussed the relevant factors, as well as the facts of the underlying crime. Specifically, the Board explored in detail petitioner’s rehabilitative efforts, educational and institutional achievements, release plans, COMPAS Risk and Needs Assessment instrument, lack of criminal history, evident remorse and insight, numerous letters of support, clean disciplinary record and the sentencing minutes, in addition to the seriousness of the crime and his initial failure to cooperate with law enforcement agents, which allowed his accomplices to escape conviction. With respect to the seriousness of the crime, it is worth noting that — as the Board recognized— petitioner was convicted of murder under the felony murder statute, under which, “[b]y operation of law, the intent necessary to sustain a murder conviction is inferred from the intent to commit a specific, serious, felonious act, even though the defendant, in truth, may not have intended to kill” (People v Stokes, 88 NY2d 618, 623 [1996]; see People v Cahill, 2 NY3d 14, 67 [2003]). Thus, while the facts as set forth in the record strongly support petitioner’s claim that he did not shoot the victim or intend to murder him, “in the eyes of the law, [he] brutally killed [a police officer]” (Matter of Silmon v Travis, 95 NY2d at 477-478).
In our view, the Board neither failed to comply with the requirements of the statutory guidelines nor engaged in irrationality bordering on impropriety. This is not a case in which, for example, the Board irrationally concluded — in glaring contradiction with both the facts in the record and the normal limits of human capability, and without a sound basis in reason — that a nearly 90-year-old, terminally ill cancer patient with additional debilitating medical conditions that required continuous medical care had “a propensity for extreme violence” based solely on the nature of the crime (Matter of Friedgood v New York State Bd. of Parole, 22 AD3d 950, 951 [2005]). Nor is this a case in which the Board “considered factors outside the scope of the applicable statute,” such as penal philosophy and the historical treatment of murderers (Matter of King v New York State Div. of Parole, 83 NY2d at 791) or in which the hearing transcript suggests that the Board improperly imposed a “burden [on petitioner] to demonstrate that his release would somehow enhance society” (Matter of Prout v Dennison, 26 AD3d 540, 541 [2006]). Rather, the record establishes that the Board acknowledged petitioner’s extensive rehabilitative sue *1274 cess along with the additional statutory factors, but placed greater emphasis on the seriousness of petitioner’s crime in its determination that release would be incompatible with the welfare of society and so deprecate the seriousness of the crime as to undermine respect for the law, as it is “entitled” to do (Matter of Montane v Evans, 116 AD3d at 203). We are thus constrained to affirm — -to do otherwise is to implicitly overrule the decades of our well-settled jurisprudence set forth above (see e.g. Matter of Comfort v New York State Div. of Parole, 68 AD3d at 1296-1297; Matter of Cruz v New York State Div. of Parole, 39 AD3d at 1061-1062; Matter of Valderrama v Travis, 19 AD3d at 905; Matter of Guerin v New York State Div. of Parole, 276 AD2d at 900).
That said, this Court is persuaded that petitioner’s achievements during his incarceration have been extraordinary. Petitioner has, among other things, earned a Bachelor’s degree from Nyack College and a Master’s degree from New York Theological Seminary, participated in myriad programs through the prison system, and acted as a teacher and mentor to dozens of current and former inmates. Most notable are the numerous letters that petitioner submitted advocating for his release, including letters from the former Commissioner of Corrections and Community Supervision, the former Chair of the Division of Parole, and the Assistant District Attorney who prosecuted petitioner. In addition, the Superintendent of Fishkill Correctional Facility opined that he “would be fine having [petitioner] and his family as [his] neighbors,” and 18 correction officers and other correction employees submitted letters further supporting petitioner’s release. As one Board commissioner acknowledged — before voting against petitioner’s release in a split decision — “anyone would be hard pressed to argue that [petitioner was not] rehabilitated.”[3]
*1275 Nevertheless, our view on whether petitioner is a “prime candidate for parole release” is not the relevant question before us (Matter of Cruz v New York State Div. of Parole, 39 AD3d at 1062). Petitioner’s record, while compelling, provides no basis for overturning our settled precedent and for failing to apply the relevant decisions of the Court of Appeals; nor do the 2011 amendments to Executive Law article 12-B. As this Court has already concluded, those amendments did not “transform[ ] or otherwise alter[ ] the obligations of either the Board in articulating its determinations or this Court in reviewing such determinations” (Matter of Montane v Evans, 116 AD3d at 203-204 n 2). In short, the statutory language of Executive Law § 259-i (5) dictating our limited power of review and the interpretation of that language by the Court of Appeals remain unchanged. Accordingly, inasmuch as the Board has not violated the statutory mandates and its determination does not exhibit irrationality bordering on impropriety under either our precedent or that of the Court of Appeals, “its discretion is absolute and beyond review in the courts” (Matter of Hines v State Bd. of Parole, 293 NY at 257; see Matter of Silmon v Travis, 95 NY2d at 476-477).
Finally, we have previously considered and rejected petitioner’s arguments that the 2011 amendments to Executive Law § 259-c (4) required the promulgation of formal rules or regulations (Matter of Montane v Evans, 116 AD3d at 202-203). Petitioner’s remaining contentions have been either rendered academic by our decision or, upon consideration, found to be lacking in merit.
Rose, J., concurs.

. In all CPLR article 78 proceedings to review determinations that are not made after a quasi-judicial hearing mandated by law, including this one, “the proper standard for judicial review ... is whether the Board’s determination was arbitrary and capricious or an abuse of discretion (see CPLR 7803 [3])” (Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Toums of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts”; or, put differently, “[Nationality is what is reviewed under . . . the arbitrary and capricious standard" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d at 231 [emphasis added]). Contrary to the dissenters’ views, our application of the arbitrary and capricious — that is, rationality — standard of judicial review amounts to neither an “assertion] that this clearly extraordinary case is not susceptible to reversal upon judicial review” (infra at 18 [Garry, J., dissenting]) or “simply ratifying a decision made by the Board so long as it adheres to the statutory mandates” (infra at 14 [Peters, PJ., dissenting]). Rather, in our view, the Board’s determination evinces a clearly reasoned basis that finds foundation in the facts of this matter and, therefore, is not irrational bordering on impropriety, as explained below.

. Again, our acknowledgment that this case is not subject to review on the merits does not imply that we are “abdicat[ing] our critical judicial function” (infra at 18 [Garry, J., dissenting]). Rather, it is a recognition of the distinction between de novo review on the merits, and the “extremely deferential!, . . .] proper standard for judicial review in these cases” — whether the Board’s determination was arbitrary and capricious (Matter of Beck-Nichols v Bianco, 20 NY3d at 559).

. We interpret the same commissioner’s frank acknowledgment that if petitioner was denied release, “the reason [he] would be held is because a police officer was murdered in the line of duty,” as a recognition that petitioner would be released unless the Board determined that the seriousness of the crime outweighed the remaining statutory factors. Similarly, that commissioner’s explanation that he found petitioner’s description of the crime “difficult ... to fathom” based upon his own experience does not amount to a misunderstanding of the facts of the crime or consideration of improper factors, as the dissenters assert. That commissioner’s discussion of the facts of the crime as set forth in the record was accurate, and he conceded that “maybe [petitioner was] telling the truth,” but nevertheless expressed his doubts about petitioner’s “credibility,” given that petitioner “could have resolved all of this” at the time of the incident, but instead “engaged in a pattern of lies from the outset about what happened.” A petitioner’s willingness to admit to *1275 the facts of the crime and a consideration of the petitioner’s activities following arrest and prior to confinement — here, the “pattern of lies” and petitioner’s refusal to cooperate with law enforcement — are factors within the scope of the statute (see Executive Law § 259-i [2] [c] [A] [vii]; Matter of Silmon v Travis, 95 NY2d at 477-478).